## Case No. 14,369.

UNION METALLIC CARTRIDGE CO. v. UNITED STATES CARTRIDGE CO.

[2 Ban. & A. 593; [1] 11 O. G. 1113.]

Circuit Court, D. Massachusetts. April 13. 1877.

PATENTS — EQUIVALENTS — PATENTED MACHINES — USE OF.

1. The machine of the complainants for making cartridges consisted of a mandrel, die and bunter, the shell being held between the die and mandrel, and advanced against the stationary bunter, which thereby formed a flange. The defendants' machine was substantially the same, except that it was operated by the bunter advancing on the die, which is kept stationary: *Held,* that the defendants infringed the complainants' patent.

2. A patentee, without describing equivalents, is entitled to be protected against the use, by others, of devices which are the equivalents of those described in his patent.

3. A purchaser from a patentee may repair and perfect the machines purchased, and use the same, but he may not use machines embracing the patented inventions, which are not the identical machines purchased.

[Cited in Young v. Foerster, 37 Fed. 204.]

In equity.

Browne & Holmes, for complainant.

D. H. Rice, for defendant.

SHEPLEY, Circuit Judge. The machine for making cartridge-cases, described in the letters patent No. 1,948, reissued to Ethan Allen. May 9th, 1865,[2] and subsequently extended, forms a flange on the head of the cartridge for the reception of the fulminate. A mandrel is advanced and inserted into the shell and pushes the shell into a die which surrounds the shell, with the closed end of

1 [Reported by Hubert A. Banning. Esq., and Henry Arden. Esq., and here reprinted by permission.]

2 [The original letters patent No. 27,094 were granted to Ethan Allen February 14, 1860.]

the shell projecting beyond the die a sufficient distance to afford metal from which the flange may be formed. The outside of the shell in this position is thus supported by the die, the inside by the mandrel, and the edges of the open end of the shell by a shoulder on the mandrel. The mandrel, die and shell then advance together, forcing the closed end of the shell against a bunter, and squeezing the end down so as to form the flange of the cartridge. The mandrel then retreats, leaving the headed shell in the die, retained there by the flange on the outside of the die on that side of the die farthest from the mandrel. The die has a gutter, which is a prolongation of the hole in the die, but open on top, into which gutter the shell is dropped prior to being acted upon by the advancing mandrel. When the mandrel is retracted after the flange has been formed on one shell, a second unflanged shell is placed in the gutter to be entered and forced forward in turn by the mandrel, the advance of this shell on the mandrel driving out the shell which was previously headed and remained in the die; the second shell is then headed as before, and so on in succession. The claims in the patent are for: "First, the mandrel which carries the cartridge shell, in combination with the die D, which admits the same, and against which the closed end of the cartridge shell is headed, substantially as described. Second, the die constructed and operating for the heading of cartridge shells, substantially as described."

In the machine admitted to be used by the defendants are found substantially the same die, mandrel and bunter operating in the same manner to form the flanged head of the cartridge and to expel the shell after being headed, except that in defendants' machine the bunter moves toward the die to head the shell, while in the Allen machine the die moves toward the bunter to head the shell. The fact, as proved, that, especially in the case of cartridges of longer sizes, there is an advantage in having the die stationary while the bunter moves toward it, is not sufficient alone to show that this latter form of the machine is not an equivalent of the other, all the elements of the combination existing alike in both, and operating alike in combination.

It is contended on the part of the defendants that the action of the commissioner of patents, in requiring a disclaimer of so much of the reissued patent as claimed in specific terms the use of the movable bunter and the stationary die, as an equivalent for the movable die and the fixed bunter, before granting an extension, is conclusive upon the complainants, but we do not so regard it. The patentee, without describing equivalents, is entitled to use equivalents and to treat the use of equivalents by others as an infringement, and this upon the evidence in the record appears to be a clear case of such a use.

There is evidence of a purchase from the patentees of five machines by the defendants. If they have only repaired and perfected these machines, the use of these machines is not an infringement. But the purchase of these five machines would not, as contended by the defendants, authorize the use of five machines embracing the patented inventions, unless they are the identical machines so purchased. The facts with regard to the extent of the infringement can only be determined on the coming in of the master's report. The injunction will be so modified as not to enjoin the use of the original five machines purchased by defendants, until the coming in of the master's report.

Decree for injunction and account, and reference to a master.

[NOTE. Exceptions were filed to the master's report, but the court affirmed the finding of profits as assessed at $40,367.26, and rendered a decree for the complainants. 7 Fed. 344. Subsequently the complainants moved to recommit the case to the master for a further statement of profits, to bring the account down to the time of the final injunction and decree. The petition was denied. 8 Fed. 446. Both parties appealed to the supreme court, where the decree of the circuit court was reversed, with costs to the United States Cartridge Company on both appeals, and the cause remanded to this court with directions to dismiss the bill, with costs. 112 U. S. 624, 5 Sup. Ct. 475.]